IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| COSSAUNDRIA EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:13cv780-MHT |
| | ) | (WO) |
| MONTGOMERY COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

In this case charging sex discrimination and
retaliation in employment, plaintiff Cossaundria
Edwards names as defendants the Montgomery County Board
of Education, its members, and various school
officials. She rests her claims on Title VII of the
Civil Rights Act of 1964, as amended (42 U.S.C.
§§ 1981a & 2000e through 2000e-17), and on § 1 of the
Civil Rights Act of 1871, as amended (42 U.S.C.
§ 1983). She also charges all defendants except the
school board with negligence and wantonness under
Alabama state law. The court has original jurisdiction

over the federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 2000e-5(f)(3) (Title VII), and supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367.

This cause is before the court on the defendants' motion for summary judgment. Summary judgment will be granted in favor of the defendants on Edwards's federal claims, and her state claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

## I.  SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to

the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

Edwards claims an assistant superintendent, Lewis Washington, sexually harassed her while she worked for the Montgomery County Board of Education as an assistant superintendent. She also alleges that she was retaliated against for reporting the harassment. The facts that follow are drawn from the evidence taken in the light most favorable to her.

In May 2011, Washington began to harass Edwards sexually. The harassment began with comments on her appearance, such as, "That skirt sure is fitting, I wish I was that skirt." Edwards Affidavit (doc. no. 55-24), at 6. She mostly ignored him. A few months later, Washington began to send Edwards text messages, some of which were sexual in nature. One string of messages, for example, said, "I love u," "Want you,"

3

"Home. Wanting," and "We could and may yet one day be awesome together." Board Memorandum (doc. no. 40-6), at 2. In total, Washington texted Edwards messages that were sexual in nature approximately 20 times. Some messages that Edwards considered inappropriate were also sent by email, though she could not recall the details of any particular messages.

Throughout this period, Edwards and Washington communicated frequently about professional and personal matters. Though she maintained a friendly relationship with Washington, Edwards did not respond to the more vulgar or crude messages, and she tried to deflect the contact with responses like "You're crazy," "You're just too much," or "That's just too much; you need to stop," but he would continue. Edwards Test. (doc. no. 40-1), at 17. In July 2011, she also refused to attend an out-of-state conference with Washington, after he had expressly requested to other staff that she accompany him. Edwards told the Director of Professional Development that she would not attend

**4**

because she was uncomfortable with Washington's advances.

In September 2011, the harassment became more explicit. Once, while they were in her office, Washington asked Edwards, "When are you going to let me lick that?" Edwards Test. (doc. no. 40-1), at 18. In the hallway, Washington told Edwards, "Push back from the table, your hips are spreading," which Edwards understood as a comment on her weight. Id. On another occasion that month, Washington approached Edwards while they were alone in an elevator after a meeting and touched his stomach to her midsection. She immediately told him to get back on his side of the elevator. She pushed him off her with her hand, and he retreated. This was the only time Washington attempted physical contact with Edwards.

Later that month, after a meeting, Edwards took the stairs, and before she reached the stairwell door, Washington opened the door and approached her again. Edwards sternly said to him, "Don't start that shit or

I'm going to scream." Edwards Test. (doc. no. 40-1), at 20. Washington responded, "Girl, please," and then he left. Id. At the end of the month, Edwards confronted Washington and asked him to stop harassing her. She threatened to report Washington to the human resources department and to tell his wife, if he did not stop. Washington responded that his wife "would probably tell you to come and get me." Edwards Affidavit (doc. no. 55-24), at 7.

On October 7, 2011, Edwards approached Superintendent Barbara Thompson after a meeting and told her that Washington had been sexually harassing her. Specifically, she told Thompson that Washington had "gotten into [her] personal space," cited the elevator and stairwell incidents, and explained that he had made her feel uncomfortable. Edwards Test. (doc. no. 40-1), at 22. Thompson sent Donald Dotson, Assistant Superintendent of Operations, to talk to Edwards.

6

The next day, when Assistant Superintendent Dotson met with Edwards, she told Dotson about the elevator and stairwell incidents, as well as the text messages. She also told him about one or two emails and showed him what she considered to be an inappropriate email sent from Washington, though she does not now recall what that email said.  Dotson told her that he thought it was "just a relationship gone bad." Edwards Test. (doc. no. 40-1), at 23.  Dotson reported back to Thompson that "he thought there was a relationship there." Thompson Test. (doc. no. 40-2), at 18.

Board policy requires a determination to be made within five working days as to the validity of any sexual-harassment complaint, and also requires that a complainant be notified in writing of the results of any investigation and of the determination of the validity of the complaint.  Amended Complaint, Exh. D (doc. no. 14-4), at 3.  However, Edwards was never notified of the status of her internal complaint, and

she took no further action until she reported the harassment again in July 2012.

Edwards says that, between September 2011 and June 2012, Washington made about 15 to 20 sexual comments to her; the harassment stopped on its own by June 2012; and Edwards did not have any further contact with Washington after July 2012.

Even after her initial internal complaint, Edwards maintained a close friendship with Washington, and she does not dispute that she maintained a personal, complimentary correspondence with him. For example, in December 2011, she emailed to Washington: "I know you are truly KRAZY... But, we work well together. You know, where my heart is.. No matter what.." Dec. 4, 2011 emails (doc. no. 40-23), at 2 (punctuation as in original). In January 2012, she discussed an upcoming absence in an email with Washington: "I know you will miss me, but try to contain yourself. ... Thank you so much for being you. I know I have a set of angel wings behind me at all times. See you soon buddy ☺." Jan.

12, 2012 emails (doc. no. 40-24), at 2.  Similarly, in
April 2012, she emailed Washington: "Thank you. You
have always had my back. I can never repay you Lewis. I
kept you structured. God always knows. Thank you for
always having my back."  Apr. 18, 2012 emails (doc. no.
40-27), at 2.

However, Edwards also says that Washington and
others in the office formed a "conspiracy" against her
and began to spy on her through her electronic devices.
As an example, she alleges that, in or about March
2012, after she made a comment to Washington about not
getting rest the night before, he responded, "What, did
you tell [your husband] to just go on and get it and be
through with it?"  Edwards Affidavit (doc. no. 55-24),
at 7.  Edwards had, indeed, said the same thing to her
husband the night before, and she understood this as
proof that Washington was spying.

Nine months after her October 2011 meeting with
Assistant Superintendent of Operations Dotson, Edwards
was called to speak with Superintendent Thompson and

Assistant Superintendent of Human Resources Veverly Arrington about a recent physical altercation between Edwards's husband and an employee under Edwards's supervision. At the end of the meeting, Edwards reiterated to Thompson and Arrington her concerns about Washington, though she did not provide any details. Edwards also explained problems she was having with other staff on her floor. A few days later, at the request of Thompson, Edwards met with counsel for the school board. Edwards recounted the incidents with Washington, showed the attorneys some of the text messages, and described problems that she had been having in the office with other staff, including her belief that certain co-workers were involved in a conspiracy against her and spying on her at home.

At a staff breakfast in August 2012, Edwards asked Dotson what was going to happen to Washington regarding her internal complaints. Soon after this conversation, Thompson and Arrington met with Edwards to discuss transferring her to a different position with less

supervisory authority but the same pay and in a different building. Edwards was told that she was being transferred to "get [her] away from Washington and everything that was going on ... [in] the central office building." Edwards Test. (doc. no. 40-1), at 51. When she asked why Washington could not be moved instead, Arrington responded, "We can't just move him out of his office right now." Id. at 48.

The defendants allege that Edwards was to be transferred to remove her from three situations: first, because of concern about a romantic relationship between Edwards and a supervisee; second, her proximity to Washington during the course of the investigation; and, third, her proximity to Washington and the other staff members whom Edwards believed had been spying on her. See Thompson Test. (doc. no. 40-2), at 15.

Because Edwards was tenured, the transfer would be immediately effective only if Edwards agreed to the move. Without her agreement, her transfer could not be approved until she had had an opportunity to present

her objections before the school board at a hearing, pursuant to 1975 Ala. Code § 16-24C-7(c).

The next day, Edwards submitted her letter of resignation. She explained in a later email to Assistant Superintendent of Human Resources Arrington that she was "disappointed that the bigger issue of harassment and retaliation were not paramount" in the school board's decision to accept her resignation. Aug. 15, 2012 email (doc. no. 40-10), at 2.  Shortly after that, Washington was placed on administrative leave and, after completing its internal investigation, the school board voted to terminate him.

Edwards then brought this lawsuit.

### III. DISCUSSION

Edwards asserts the following claims: Title VII claims of sexual harassment, sex discrimination, and retaliation; a § 1983 claim of deliberate indifference to discrimination; and state-law claims of negligence, and wantonness.  She named as defendants the school

board and its members, the current and former
superintendents, and the assistant superintendent for
human resources.  The defendants seek summary judgment
on all claims.

### A. Title VII Claims

#### 1. Liability of Individual Defendants

Edwards brings several of her Title VII claims
against individual defendants in their official and
individual capacities.  Because the school board has
been sued as a defendant, Edwards's claims against the
individual defendants in their official capacities are
redundant.  See Kentucky v. Graham, 473 U.S. 159, 165
(explaining that official capacity suits "generally
represent only another way of pleading an action
against an entity of which an officer is an agent").
Furthermore, "[i]ndividual capacity suits under Title
VII are ... inappropriate.  The relief granted under
Title VII is against the employer, not individual
employees whose actions would constitute a violation of

the Act. ... [T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original).

The court accordingly will grant summary judgment to the individual defendants on all Title VII claims, leaving only the school board as a defendant on these claims.

### 2. Sex Discrimination

Title VII bars an employer from discriminating against an employee "because of ... sex." 42 U.S.C. § 2000e-2(a)(1). This provision "prohibits sex-based discrimination that alters the terms and conditions of employment." <u>Baldwin v. Blue Cross/Blue Shield of Alabama</u>, 480 F.3d 1287, 1300 (11th Cir. 2007). An employee can establish a sex-based violation of Title VII in two ways: (1) "through tangible employment

14

action" or (2) "through creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of the work." <u>Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship</u>, 490 F.3d 1302, 1308 (11th Cir. 2007).

Edwards asserts three Title VII sex-discrimination claims against the school board: hostile-work environment, constructive discharge, and disparate treatment. The court will analyze each claim in turn.

### a. Hostile-Work Environment

A plaintiff may establish a prima-facie case of hostile-work environment by showing "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5)

that a basis for holding the employer liable exists."
Hulsey v. Pride Rest., LLC, 367 F.3d 1238, 1244 (11th
Cir. 2004).

In addition to contesting that Edwards has failed
to establish all the necessary elements, the school
board argues that Edwards's hostile-environment claim
is time-barred. The court agrees that it is
time-barred.

42 U.S.C. § 2000e-5(e)(1) "is a charge filing
provision that specifies with precision the
prerequisites that a plaintiff must satisfy before
filing [a Title VII] suit." National Railroad
Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002)
(internal citations omitted). With exceptions not
relevant here, the statute requires a potential Title
VII plaintiff to file a charge with the Equal
Employment Opportunity Commission (EEOC) within 180
days "after the alleged unlawful employment practice
occurred." 42 U.S.C. § 2000e-5(e)(1). Plaintiffs may
not sue on discrete acts of discrimination that occur

16

outside this statutory time period.   <u>Morgan</u>, 536 U.S. at 113.   However, when a plaintiff alleges a hostile-work environment, under the 'continuing violation' doctrine, the alleged violation is not any particular, discrete act of harassment, but the cumulative result of "a series of separate acts that collectively constitute one 'unlawful employment practice.'"   <u>Id</u>. at 117.   Therefore, as long as one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."   <u>Id</u>.

Under the continuing-violation doctrine, the acts occurring within the statutory period need not, on their own, be actionable.   Instead, they need merely to <u>contribute</u> to the same unlawful employment practice. <u>See</u> <u>Shields v. Fort James Corp.</u>, 305 F.3d 1280, 1282 (11th Cir. 2002) ("Put simply, if the smallest portion of that 'practice' occurred within the limitations time period, then the court should consider it as a

whole."). However, "[f]or an act to be considered part of an actionable hostile work environment claim, it must be of a sexual or gender-related nature." <u>Menefee v. Montgomery County Bd. of Educ.</u>, 137 F. App'x 232, 233 (11th Cir. 2005) (internal citations omitted).

In this case, Edwards filed her EEOC charge on August 24, 2012. Therefore, in order to recover for the discrimination that occurred in 2011, some portion of the claim must have occurred after March 25, 2012, 180 days prior to when she filed her EEOC charge.

Edwards's brief cites evidence of only one specific incident during the statutory time period, an email allegedly sent in June 2012. The court reproduces the exchange below, which referenced the rescheduling of a staff meeting due to Washington's attendance at a conference:

> "[Edwards:] Lewis, I am upset with you. You are the only one that will not be here. I had planned to take off on both Monday and Tuesday. [...]
>
> "[Washington:] Do our thoughts really matter? Soooooo mad at you!!!!!

"[E:] Don't start that silly mess!!!!
No one has done anything to you. I am
not in the mood for your games today!

"[W:] You are right....not yet:):)...u
should be here!!!! Great conference.
Have something for you.

"[E:] Forget it. Learn a lot. You will
have to come back and share with the
group.

"[W:] Headed to airport.

"[E:] Ok. You guys have a safe
flight."

June 25-27, 2012 emails (doc. no. 40-29), at 2-3.
Edwards argues that Washington's statement "Have
something for you" has a sexual connotation.  But this
comment does not appear sexual on its face, and Edwards
provides no evidence to contextualize this statement as
such, nor any evidence that she perceived it as sexual
at the time.  See Menefee, 137 F. App'x at 233-34
(explaining that plaintiff failed to demonstrate a
continuing violation sufficient to save a claim from
being time-barred when the acts that occurred within
the statutory period did not appear sexual in nature or
related to gender "on their face," and because the

19

plaintiff "failed to present evidence that would yield a reasonable inference that the [acts occurring within and outside the statutory period] are part of the same actionable hostile work environment practice"). Within the context of the surrounding conversation, it is certainly not clear that this statement was sexual harassment, such that it could establish the continuation of the unlawful employment practice.[1]

Other than this email exchange, Edwards says that Washington made 15 to 20 sexual comments to her between September 2011 and June 2012, and that his text messages and emails continued until that date. However, she does not recall any particular statements or incidents. At the summary-judgment stage, Edwards must go beyond conclusory allegations, and she must present evidence sufficient to create a triable issue

---

[1]. Edwards also alleges that Washington tried to call her in August 2012, after he had been instructed not to contact her, though she did not answer the phone and does not know why he called. For the same reasons, this bare allegation is not sufficient to establish sexual harassment.

of fact.  See Evers v. General Motors Corp., 770 F.2d 984, 986 (explaining that after a party has moved for summary judgment, "conclusory allegations without specific supporting facts have no probative value"); Fed. R. Civ. P. 56(a).  The court cannot rely on her conclusory characterization of these interactions as sexual harassment; some detail is required to assess whether these acts violated the law.  Edwards has failed to meet this burden.[2]

---

2. Admittedly, there are two incidents in the record which possibly occurred during the relevant time period.  But neither suffices to establish continuing harassment.  Moreover, the court has no obligation to search the record or to construct arguments for the plaintiff.  See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995) ("We do not require trial courts to search the record and construct every argument that could have been made based upon the proffered materials.").

The first is an email that Edwards describes in her deposition testimony, which was sent by Washington to Edwards sometime shortly before she resigned, regarding an upcoming meeting.  Edwards alleges that the tone of this email was condescending and that, because other employees were copied on the email, she was made to feel that others believed that Washington had authority over her.  However, even given the low bar set to establish a continuing violation, this email could not (continued...)

Moreover, because she claims to have lost all records of any statements, including a diary that she once possessed in which she memorialized Washington's statements, and because she denies the existence of any other records of emails or text messages, it does not appear that she will be able to produce any additional evidence at trial.

---

constitute an act contributing to the hostile-environment claim.

Second, Edwards testified in her deposition and affidavit about a statement made by Washington about her intimate life with her husband in or about March 2012, in which Washington asked her, "What, did you tell [your husband] to just go on and get it and be through with it[?]" Edwards Affidavit (doc. no. 55-24), at 7. She mentions it during her deposition in the context of her concerns that several individuals in her office had been spying on her--Washington being one of them--rather than as evidence of Washington's sexual harassment. Indeed, Edwards does not raise this statement in her briefing as an act that falls within the statute-of-limitations period. Therefore, because Edwards herself does not characterize this statement as part of the same conduct that she had endured the previous year, such that it could contribute to her hostile-environment claim, and because Edwards does not allege that the statement was made within the statutory period--that is, after March 25, 2014--this single statement, without more, does not establish that the unlawful practice continued into the statutory period.

Because she has failed to put forward evidence of any particular acts contributing to the claim occurring within the statutory period, Edwards's hostile-environment claim is time-barred.[3]   The court will grant summary judgment on this claim.

### b. Constructive Discharge

Edwards also claims that her resignation amounted to a constructive discharge because her working conditions had become intolerable.   Edwards argues that the escalation of the hostile environment and the impending transfer forced her discharge.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."   Pa. State

---

3. Edwards does not argue that the proposed transfer is an event within the statutory period that forms a continuation of the alleged hostile environment.   In any case, because she concedes that the harassment ceased on its own by June 2012, the court does not consider the transfer as part of the hostile environment.

Police v. Suders, 542 U.S. 129, 141 (2004).   To establish a constructive discharge, a plaintiff must make a further showing than that required for a hostile-environment claim: the plaintiff must show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Id. at 134.   "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"   Id. at 141.

Above, the court explained that Edwards concedes that the harassment stopped on its own by June 2012 and that the only evidence she cites to between October 2011 and June 2012 was conclusory.   Therefore, to the extent that her constructive-discharge argument is based on a hostile environment, it must fail.   Edwards simply does not demonstrate that her working conditions, as they relate to the harassment, had become "so intolerable" that a reasonable person in her

position would have felt suddenly compelled to resign
in August 2012.  <u>Id</u>.

To the extent that her constructive-discharge
argument is based on the proposed transfer, it also
fails.  While a transfer "to a position in which [an
employee] would face unbearable working conditions" may
support a constructive-discharge argument, <u>Suders</u>, 542
U.S. at 134, Edwards makes no argument regarding the
working conditions that she would face in the new
position, beyond stating that it would move her to a
different building and involve less responsibility.
She provided no evidence that the conditions in the new
building would be unpleasant or that her
responsibilities would be reduced drastically.  <u>Cf</u>.
<u>Fitz v. Pugmire Lincoln-Mercury, Inc.</u>, 348 F.3d 974,
978-79 (11th Cir. 2003) (citing examples of intolerable
working conditions sufficient to create a genuine issue
of material fact as to constructive discharge,
including: being relocated to a new work station
without a desk or computer; being ostracized by other

employees at the employer's instruction; having one's duties and responsibilities "reduced to virtually nothing"; being subject to a "host of vulgar comments"; and being reassigned to "more distasteful duties").

Moreover, Edwards resigned before her transfer recommendation was approved or finalized. As noted earlier, because Edwards was a tenured employee, the transfer would become effective only if she agreed to it, or after she received written notice and an opportunity to be heard at a hearing before the school board. See Ala. Code 1975 § 16-24C-7(c). The mere possibility of facing undesirable conditions cannot, on its own, support a constructive-discharge claim. See Rowell v. BellSouth Corp., 433 F.3d 794, 806 (11th Cir. 2005) (explaining that "the possibility that a plaintiff may not remain employed is not by itself enough to place a reasonable person in the position of 'quit or be fired.'"); cf. Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752, 754 (11th Cir. 1996) ("A constructive discharge will generally not be found if

the employer is not given sufficient time to remedy the situation.").


### c. Disparate Treatment

Based on a theory of disparate treatment, Edwards asserts a sex-discrimination claim distinct from her hostile-environment claim.  She argues that the school board discriminated against her on the basis of sex when it developed a plan to transfer her, rather than Washington (a man), out of the central office.[4]  Edwards may establish a prima-facie case of disparate treatment based on her sex by showing: (1) she is woman; (2) she was subjected to an adverse-employment action; and (3) her employer treated similarly situated male employees

---

4. In her amended complaint, Edwards argues that the school board discriminated against her by accepting her resignation without having taken any action against Washington and by allowing Washington to resign with benefits rather than being terminated.  As she no longer pursues these theories, Edwards has abandoned them.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (explaining that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

more favorably.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

The school board argues that Edwards was not subject to an adverse-employment action; that Washington was not similarly situated to Edwards; and that, because he was eventually terminated, Washington was not treated more favorably.  Because the court agrees that no adverse-employment action was taken against Edwards, there is no need to reach the school board's other arguments.

The plan to transfer Edwards did not constitute an adverse-employment action because Edwards resigned before the transfer decision was finalized.  An employment action is the "means by which the supervisor brings the official power of the enterprise to bear on subordinates," Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 762 (1998), and an employment action can be adverse when it causes an employee's "discharge, demotion, or undesirable reassignment."  Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).  Under

28

Alabama law, Edwards--as a tenured employee--was entitled to written notice of Superintendent Thompson's transfer recommendation and an opportunity to be heard by the school board before it approved the proposed transfer. <u>See</u> 1975 Ala. Code § 16-24C-7(c). But Edwards resigned before receiving the written notice and before meeting with the board regarding the proposed transfer--and, therefore, before the recommendation could become an adverse-employment action. <u>See</u> <u>Baldwin v. Blue Cross/Blue Shield of Alabama</u>, 480 F.3d 1287, 1300 (11th Cir. 2007) ("An offer to transfer an employee, however, is not an employment action; it is merely an offer. Providing an employee with a choice about where she works does not change the terms or conditions of her employment.").

Because Edwards has not established that she was subjected to an adverse-employment action, the court will grant summary judgment on the disparate-treatment claim.

29

### 3. Retaliation

"Title VII prohibits not only discrimination, but retaliation against an employee because she 'has opposed any practice made an unlawful employment practice by Title VII.'" Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008)). Edwards argues that she was retaliated against when Thompson proposed to transfer her after she voiced concerns about Washington a second time.

Once a plaintiff establishes a prima-facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory and non-discriminatory reason for the adverse-employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Brown v. Alabama Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010); see also Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The school board argues that Edwards has failed to make the required prima-facie

30

showing of retaliation.  The court disagrees.  However,
because "[i]t matters not whether [the plaintiff] has
made out a prima facie case if she cannot create a
genuine issue of material fact as to whether [the
defendant's] proffered reasons for [the materially
adverse action] are pretext masking discrimination."
Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253,
1265 (11th Cir. 2010), the court will turn first to
Edwards's ultimate burden.

The school board has articulated two reasons--other
than the issues involving Washington--behind Edwards's
transfer: first, Edwards was to be moved because of
concern about a possible romantic relationship between
Edwards and a supervisee; and, second, Edwards was to
be moved away from the staff members who she believed
were involved in a conspiracy against her.  Edwards
must therefore prove by a preponderance of the evidence
that these reasons form a pretext for unlawful
retaliation.  Moreover, because the Supreme Court
recently held that to prove retaliation, a plaintiff

must demonstrate that her protected activity was the 'but-for' cause of the adverse-employment action, Edwards must also prove that her complaints about Washington were actually the 'but-for' cause of the proposed transfer.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013).[5]

To prove 'but-for' causation, a plaintiff will not meet her burden simply by proving that the protected activity was a "motivating factor for any employment practice, even though other factors also motivated the

---

5. Though the Court did not clarify at what stage in the McDonnell Douglas analysis a plaintiff must prove 'but-for' causation, the Eleventh Circuit has incorporated 'but-for' proof into the burden of persuasion to be carried by the plaintiff after the employer has articulated a legitimate, non-retaliatory reason, rather than a burden of production to be carried when making a prima-facie case.  See Mealing v. Georgia Dep't of Juvenile Justice, 564 F. App'x 421, 427 (11th Cir. 2014) (applying the Nassar standard after the burden shifts back to the plaintiff); Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 778 (11th Cir. 2013) (explaining that showing but-for causation is part of the plaintiff's burden of persuasion); see also Sims v. MVM, Inc., 704 F.3d 1327, 1337 (11th Cir. 2013) (applying but-for causation requirement in the context of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634).

practice." <u>Nassar</u>, 133 S.Ct. at 2526 (citing 42 U.S.C. § 2000e-2(m) and explaining that the anti-discrimination provision of Title VII has a "lessened causation standard," as compared to the retaliation provision). Instead, the plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." <u>Id</u>. at 2533; <u>see also</u> <u>id</u>. at 2525 (explaining traditional principles of but-for causation in tort law).

Edwards cannot meet her burden. First, she does not demonstrate that the school board's proffered reasons are pretextual. Edwards attempts to rebut the school board's argument regarding her supervisee by explaining that the transfer in fact would have moved her closer to him, but the record reflects that the supervisee, too, was to be transferred under the proposal. And Edwards provides no response whatsoever to the school board's argument that the transfer was intended to move her away from the other staff members

33

that she believed were involved in a conspiracy against
her.

Moreover, because Edwards fails to rebut the school
board's contention that legitimate reasons, any one of
which would have alone more than adequately justified
her transfer, no reasonable factfinder could conclude
that the proposed transfer "would not have occurred"
without her internal complaint. Smith v. City of New
Smyrna Beach, 588 F. App'x 965, 981 (11th Cir. 2014).
She therefore has failed to prove but-for causation.
See Nassar, 133 S.Ct. at 2525 ("It is ... textbook tort
law that an action is not regarded as a cause of an
event if the particular event would have occurred
without it."); see also Burrage v. United States, 134
S. Ct. 881, 888 (2014) (discussing Nassar's but-for
test, and explaining that but-for causation can be
shown when two or more factors combine only "so long as
the other factors alone would not have done so").
Edwards's retaliation claim fails as a matter of law.

## B. § 1983 Claim

Edwards also brings a claim, which she calls "DELIBERATE INDIFFERENCE SECTION 1983," against Superintendent Thompson and Assistant Superintendent of Human Resources Arrington in their official and individual capacities, arguing that they "acted with deliberate indifference to the discriminatory acts of Lewis Washington and the rights of Plaintiff." Amended Complaint (doc. no. 14), at 18-19.[6]  It appears that Edwards brings a cause of action under 42 U.S.C. § 1983, predicated on deliberate indifference to discrimination and the deprivation of certain unspecified rights.

---

6. At certain points in this section of the complaint, Edwards seems to also plead generally against all of the defendants.  However, because she states that the claim, as a whole, "is brought against individual Defendants in their official and individual capacity," and because she specifically names only Thompson and Arrington, the court will construe the claim as against only Thompson and Arrington, in their official and individual capacities.

"Section 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions. Section 1983 does not create any substantive federal rights in and of itself; it is merely a vehicle to bring such suits. Therefore, a § 1983 plaintiff must allege a specific federal right violated by the defendant." <u>Doe v. Sch. Bd. of Broward Cnty., Fla.</u>, 604 F.3d 1248, 1265 (11th Cir. 2010) (internal citations omitted).

Neither the complaint nor the amended complaint rests on any specific statutory or constitutional rights violations that would afford her § 1983 relief.[7] Nevertheless, at a pre-trial conference held on the record, Edwards made clear that her § 1983 claim was based on Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681(a)), a statutory scheme

---

7. Edwards cannot recover under § 1983 for the deprivation of rights created solely by Title VII. <u>See Scott v. Estes</u>, 60 F. Supp. 2d 1260, 1269 (M.D. Ala. 1999) (Thompson, J.) (collecting cases).

that prohibits gender discrimination in education programs receiving federal financial assistance.

While Edwards mentions Title IX in her summary-judgment briefing, her argument is not coherent.[8]   Moreover, because she did not allege a violation of Title IX anywhere in her complaint or amended complaint, she put neither the defendants nor the court on notice of this claim.   Because it rests entirely upon grounds that she did not properly raise, Edwards's § 1983 claim fails as a matter of law.   <u>See</u> <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1313,

---

8. Indeed, much of this section of the briefing is entirely unintelligible. For example, the court reproduces the Title IX discussion in part, and without any alteration or correction:

"<u>Jackson v. B'ham Bd. of Education</u>, 544 U.S. 167, 183-184 (2005) holds, that retaliation is a form of discrimination on the basis of sex prohibited under Title X; 'Title IX prohibited sex discrimination by reciprocated of federal education funding.... Title VII principle support in Title IX deliberate with often before the U.S. Supreme Court analyzed the two sides in reform to school delegates in different classes....'"

<u>See</u> Plf. Response to Summary Judgment (doc. no. 53), at 52.

1315 (11th Cir. 2004) ("The central issue in this case is whether a non-moving party plaintiff may raise a new legal claim for the first time in response to the opposing party's summary judgment motion. We hold it cannot.... At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")

Therefore, the defendants are granted summary judgment on Edwards's § 1983 claim.


### C. State-Law Claims

Finally, Edwards alleges that the individual defendants, in their official and individual capacities, negligently and wantonly breached their state-law duty to Edwards. The court declines to reach the merits of these claims.

A district court has discretion to decline supplemental jurisdiction over a claim when it "has

38

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Factors to be taken into account include "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).[9] Courts are strongly encouraged to dismiss state claims when the federal claims have been resolved prior to trial. See id. (concluding that "federal court[s] should decline the exercise of [supplemental] jurisdiction by dismissing the case without prejudice" when the federal law claims have been dismissed prior to trial). See also Missildine v. Community Action Committee, 2011 WL 350517, at *3 (M.D. Ala. 2011) (Thompson, J.).

---

9. Carnegie–Mellon was decided before the passage in 1990 of 28 U.S.C. § 1367, which expressly authorized district courts to decline exercise of supplemental jurisdiction over state-law claims if all claims within the court's original jurisdiction had been dismissed. Nevertheless, Carnegie–Mellon remains useful in analyzing when district courts should decline to exercise supplementary jurisdiction.

In this case, because the court has found against Edwards on her federal claims prior to trial, her state claims will be dismissed without prejudice. This dismissal will not prejudice Edwards, because the period of limitations for filing the state-law claims in state court is tolled "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period," pursuant to 28 U.S.C. § 1367(d).

* * *

Accordingly, for the above reasons, the defendants' motion for summary judgment will be granted with respect to all of Edwards's federal claims, and Edwards's state claims will be dismissed without prejudice. An appropriate judgment will be entered.

DONE, this the 23rd day of February, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE